## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **KEVIN DOOLEY KENT, in his capacity as Receiver for Broad Reach Capital, LP, Broad Reach Partners, LLC, Bristol Advisors, LLC, and Elm Street Investments, LLC,** | : : : : : : | **Civil Action** |
| | | **No. 2:21-cv-18396** |
| **Plaintiff,** | : : | **Motion Day: June 20, 2023** |
| **v.** | : : | |
| **AGOSTINHO CALCADA,** | : : | |
| **Defendant.** | : | |

---

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF, KEVIN DOOLEY KENT, RECEIVER

Robin S. Weiss, Esq.
Christopher M. Lucca, Esq.
Clark Hill PLC
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Tel: (215) 640-8500
rsweiss@clarkhill.com
clucca@clarkhill.com

*Attorneys for Plaintiff, Kevin Dooley Kent, Receiver*

Dated: April 27, 2023

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION .................................................................................1

II.    FACTUAL HISTORY .........................................................................2

       A.    The Real Estate Transaction Involving the Golden Beach Property .......3

       B.    The Promissory Note ..............................................................8

       C.    The Golden Beach Property is Foreclosed Upon, and Sunny Ocean
             Files for Bankruptcy ............................................................10

       D.    Defendant and Sunny Ocean Default on the Promissory Note ............12

       E.    The Instant Action...............................................................13

III.   ARGUMENT.....................................................................................13

       A.    Standard on Summary Judgment ...........................................14

       B.    The Receiver Has Successfully Reestablished the Note and is
             Entitled to Enforce the Note on Behalf of Elm Street Investments.......15

             1.    Elm Street Investments Was Entitled to Enforce the Note
                   at the Time Loss of Possession Occurred. ....................................19

             2.    The Loss of Possession Was Not the Result of Transfer
                   or Lawful Seizure.........................................................21

             3.    The Receiver Cannot Reasonably Obtain Possession of the
                   Note Because its Whereabouts Cannot be Determined. ................22

             4.    The Receiver Has Proven the Terms of the Note and His Right
                   to Enforce the Note on Behalf of Elm Street Investments.............24

             5.    The Receiver is Entitled to Payment Pursuant to the Terms
                   of the Note Because Defendant Admits the Authenticity of His
                   Signature on the Note and His Authority to Sign the Note. ..........26

             6.    Defendant is Adequately Protected Against Loss that Might
                   Occur by Reason of a Claim by Another Person to Enforce
                   the Instrument..............................................................28

7.    The Receiver Has Satisfied All Elements Necessary to Entitle Him to Enforce the Note. ....................................................32

C.    Defendant Has Breached His Obligations Under the Note and is Therefore Liable for All Amounts Due Under the Note ......................32

IV.    CONCLUSION..............................................................................37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)....................................................................15

*Bobby D. Assocs. v. DiMarcantonio*,
  751 A.2d 673 (Pa. Super. Ct. 2000)...............................................31

*Branch Banking & Trust Co. v. S & S Dev., Inc.*,
  No. 8:13-1419-T-30TGW, 2014 WL 2215703
  (M.D. Fla. May 28, 2014).....................................................21, 29, 32

*Connelly v. Matthews*,
  899 So. 2d 1141 (Fla. 4th DCA 2005)........................................23, 29

*Conquest v. WMC Mortg. Corp.*,
  247 F. Supp. 3d 618 (E.D. Pa. 2017).............................................32

*Equip. Fin., LLC v. Hutchison*,
  No. 09-01964, 2011 WL 4482345 (E.D. Pa. Sept. 27, 2011)............33

*Ford Motor Co. v. Heralpin USA, Inc.*,
  No. 20-20876, 2020 WL 4501807 (S.D. Fla. June 4, 2020) ............33

*Frenkel v. Klein*,
  No. 14-2275, 2016 WL 7404466 (E.D. Pa. Dec. 22, 2016) ..............33

*Gee v. McDevitt*,
  No. 619CV936ORL31 GJK, 2020 WL 5371145
  (M.D. Fla. Aug. 11, 2020) ..........................................................31

*Hamilton v. Flowers*,
  183 So. 811 (Fla. 1938) ..............................................................25

*Harris v. Jan*,
  No. 2:18-383, 2019 WL 2567963 (M.D. Fla. June 21, 2019)...........33

*In re Wiand*,
  No. 8:05CV1856, 2007 WL 963162 (M.D. Fla. Jan. 12, 2007).........25

*J.J. Gumberg Co. v. Janis Servs.*,
    847 So.2d 1048 (Fla. 4th DCA 2003)...................................................32

*JPMorgan Chase Bank v. Synergy Pharmacy Servs., Inc.*,
    No. 8:18-1253-VMC-SPF, 2021 WL 2351179
    (M.D. Fla. June 9, 2021)...................................................33

*Lipton v. Se. First Nat. Bank of Miami*,
    343 So.2d 927 (Fla. Dist. Ct. App. 1977)...................................................26

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...................................................15

*MB Fin. Bank v. Rao*,
    239 A.3d 181 (Pa. Super. Ct. 2020)...................................................21, 23, 31

*Nat'l Recovery Sys. v. Nemchik*,
    24 Pa. D. & C.3d 22 (Pa. Com. Pl. 1982)...................................................26

*NWE7 LLC v. Thomco Enterprises, Inc.*,
    No. 3:13CV439/MCR/EMT, 2015 WL 11109790
    (N.D. Fla. Jan. 5, 2015)...................................................24

*Peoples State Bank of Wyalusing, PA v. Wellsburg Truck & Auto Sales, Inc.*,
    No. 3:CV-10-0433, 2013 WL 818726 (M.D. Pa. Mar. 5, 2013)...................................................34

*PHH Mortg. Corp. v. Powell*,
    100 A.3d 611 (Pa. Super. Ct. 2014)...................................................20

*Resol. Tr. Corp. Receiver of Action Fed. Sav. Bank v. Wilson*,
    851 F. Supp. 141 (D.N.J. 1994)...................................................14

*Resol. Tr. Corp. v. Koock*,
    867 F. Supp. 284 (E.D. Pa. 1994)...................................................25

*Tuxedo Beach Club Corp. v. City Fed. Sav. Bank*,
    749 F. Supp. 635 (D.N.J. 1990)...................................................14, 15

*U.S. Bank Nat. Ass'n v. Knight*,
    90 So. 3d 824 (Fla. Dist. Ct. App. 2012)...................................................19

*U.S. Bank Nat. Ass'n v. Piacente*,
No. 472 MDA 2015, 2015 WL 7301906
(Pa. Super. Ct. Nov. 19, 2015) ...................................................................18, 24

*Wells Fargo Bank, N.A. v. Bricourt*,
290 So.3d 501 (Fla. Dist. Ct. App. 2020) ...........................................................22

*Wells Fargo Bank, N.A. v. Chun Chin Yung*,
317 F. Supp. 3d 879 (E.D. Pa. 2018) ...................................................................34

*Xerox Corp. v. Se. Print Programs, Inc.*,
No. 8:16-2159-T-33TGW, 2016 WL 6217123
(M.D. Fla. Oct. 25, 2016) ...................................................................................31

**Rules**

Fed. R. Civ. P. 56 ...............................................................................................14

**Statutes**

13 Pa.C.S. § 1201(21)(i) .....................................................................................19

13 Pa.C.S. § 3109 ...............................................................................................29

13 Pa.C.S. § 3118(a) ...........................................................................................30

13 Pa.C.S. § 3204(a) ...........................................................................................29

13 Pa.C.S. § 3301 .....................................................................................16, 19, 20

13 Pa.C.S. § 3305(a)(1)(iii) ................................................................................27

13 Pa.C.S. § 3308 ..........................................................................................*passim*

13 Pa.C.S. § 3309 ..........................................................................................*passim*

42 Pa.C.S. § 5525(a)(7) .......................................................................................30

28 U.S.C. § 959(b) ...............................................................................................25

Fla. Stat. § 95.11(2)(b) ........................................................................................30

Fla. Stat. § 671.201(21)(a) ..................................................................................19

Fla. Stat. § 673.1091 ...........................................................................................29

Fla. Stat. § 673.2041(1) ...................................................................................29

Fla. Stat. § 673.3011 .........................................................................16, 19, 20

Fla. Stat. § 673.3051(1)(a)(3) .........................................................................27

Fla. Stat. § 673.3081 .................................................................18, 26, 27, 28

Fla. Stat. § 673.3091 ..........................................................................*passim*

## I.    INTRODUCTION

The Receiver initiated the instant action against Defendant Agostinho Calcada ("Defendant" or "Calcada"), to recoup $1,530,740.83 loaned by Receivership Party Elm Street Investments LLC ("Elm Street Investments") to Defendant, individually, and Sunny Ocean 699, LLC ("Sunny Ocean"), for the purchase of vacant land located at 699 Ocean Blvd, Golden Beach, Florida, 33160 (the "Golden Beach Property"), plus attorneys' fees and costs. The loan was memorialized by a promissory note (the "Note" or "Promissory Note") dated October 19, 2016 for $1,530,740.83 issued in favor of Elm Street Investments as "Lender," and signed by Defendant, both individually and on behalf of Sunny Ocean, as "Borrowers."  To date, this loan has not been repaid.

Under the clear terms of the Note: (1) "Borrowers" Defendant and Sunny Ocean were required to pay the loan plus any accrued and unpaid interest to "Lender" Elm Street Investments by no later than October 11, 2017; (2) the Borrowers are liable for the full amount of the loan plus six (6%) interest, attorneys' fees, and costs due to their failure to repay Elm Street Investments by October 11, 2017; and (3) Elm Street Investments can enforce the Note against any Borrower, individually or jointly.

The Receiver files this Motion for Summary Judgment to reestablish and enforce the Note against Defendant, and for judgment in his favor and against

Defendant for the full balance of the Note, plus six (6%) interest, attorneys' fees, and costs, because Defendant does not dispute (1) the existence of the Note, (2) that he signed and executed the Note, (3) that the copy of the Note attached to the Amended Complaint is a true and correct copy of the original, wet-ink Note, or (4) that neither he or Sunny Ocean have repaid Elm Street Investments on the Note. Accordingly, and as explained in detail below, the Receiver is entitled to judgment as a matter of law.

## II.    FACTUAL HISTORY

On June 29, 2020, the Receiver was appointed by the United States District Court for the District of New Jersey to serve as Receiver over various entities associated with Brenda Smith (*i.e.*, the "Receivership Parties") in the SEC enforcement action styled *SEC v. Smith, et al.*, C.A. No. 2:19-cv-17213 (MCA) ("SEC v. Smith Action") (hereinafter "Receivership Order"). (Statement of Undisputed Material Facts ("SUMF") ¶ 3). Pursuant to the Receivership Order, the Receiver has the sole authority to act on behalf of Receivership Party Elm Street Investments, including initiating and pursuing legal proceedings on its behalf and for the benefit of the Receivership Estate. (SUMF ¶¶ 4-7). The Receiver filed the instant action against Defendant to recover $1,530,740.83 loaned by Elm Street Investments to Defendant and Sunny Ocean for the purchase of the Golden Beach

Property, memorialized by the October 19, 2016 Promissory Note, plus interest, attorneys' fees, and costs. (SUMF ¶ 1).

### A.    The Real Estate Transaction Involving the Golden Beach Property[1]

In 2016, Defendant—a sophisticated and experienced real estate investor who has been investing (and borrowing money to invest) in properties since 1999—discovered the Golden Beach Property through his real estate agent, Laurent Benzaquen. (SUMF ¶¶ 33-34). Defendant created Sunny Ocean on September 14, 2016 for the purpose of purchasing the Golden Beach Property, and was Sunny Ocean's sole member, manager, and registered agent at the time. (SUMF ¶¶ 12-14, 35).

On September 15, 2016, Sunny Ocean entered into a Purchase and Sale Agreement ("PSA") to purchase the Golden Beach Property for $7,400,000.00 from Residence Golden Beach FLA, LLC. (SUMF ¶ 36). When Defendant signed the PSA for Sunny Ocean, he did not yet know how he would finance the transaction, but he wanted to close on the property as quickly as possible because there were other interested buyers. (SUMF ¶¶ 42, 44). At least through October 3, 2016, he still did not know with whom he would be partnering for the acquisition of the Golden Beach Property, nor did he have funding arranged. (SUMF ¶¶ 47-48).

---

[1]    References to the purchase of the Golden Beach Property and the events leading up to the purchase are hereinafter referred to as the "Real Estate Transaction."

Elm Street Investments eventually decided to fund the Real Estate Transaction. (SUMF ¶ 52). However, Defendant never spoke to Elm Street Investment's sole member and manager, Brenda Smith. (SUMF ¶¶ 9, 58). Rather, Defendant's communications were with an individual named George Heckler ("Heckler")[2]—who introduced Brenda Smith to the Real Estate Transaction—and with Elm Street Investments' attorney, Andrew Hurni. (SUMF ¶¶ 87, 108-09).

On October 13, 2016, Sunny Ocean entered into a Reinstatement of Purchase and Sale Agreement and Application of Full Loan Amount Due to Purchase Price ("Reinstatement of PSA"), under which Sunny Ocean was to assume an original mortgage and note on the Golden Beach Property in the amount of $5,924,070.83 in favor of Victor K. Rones, Trustee for an Unrecorded Land Trust ("Original Mortgage and Note"), due on June 25, 2017, which amount would be reduced from the purchase price. (SUMF ¶ 53).

On October 14, 2016, Defendant and Elm Street Investments entered into an operating agreement for Sunny Ocean, a member-managed LLC ("Sunny Ocean Operating Agreement"), pursuant to which Defendant and Elm Street Investments were each identified as members with a fifty percent interest in Sunny Ocean.

---

[2]    George Heckler was not a member, manager, or employee of Elm Street Investments. (SUMF ¶¶ 9-10). Neither Heckler nor Brenda Smith made any representation to Defendant regarding Heckler's authority to act or speak on behalf of Elm Street Investments, and Defendant did not attempt to clarify Heckler's role with Elm Street Investments prior to entering into the Real Estate Transaction and signing the Promissory Note at issue in this action. (SUMF ¶¶ 57-58).

(SUMF ¶¶ 15, 54).  Elm Street Investments' capital contribution for its fifty percent (50%) membership interest was $1,540,000.00, and Defendant's capital contribution for his fifty percent (50%) membership interest was $0.00.  (SUMF ¶¶ 15, 50, 63).[3]

The Sunny Ocean Operating Agreement provides that Sunny Ocean intended to purchase the Golden Beach Property "for the resale and/or potential development of the property to be sold at fair market value. Said purpose shall be referred herein as 'Development Project.'"  (SUMF ¶ 61).  Section 1.8 of the Sunny Ocean Operating Agreement further provides:

> The Members agree that the Company shall assume an existing mortgage in the amount of FIVE MILLION NINE HUNDRED TWENTY FOUR THOUSAND AND SEVENTY DOLLARS AND EIGHTY THREE CENTS ($5,924,070.83) with Victor K. Rones, Trustee for an Unrecorded Land Trust, currently secured in a first lien holder position against the real property known as 699 Ocean Blvd., Golden Beach, Florida.

> Moreover, at the time of acquiring the Development Project, Elm Street Investments, LLC will have had a note in the amount of $250,000.00 issued by Sunny Ocean 699 LLC and Agostinho Calcada, individually ("Closing Note"). The Members agree that upon the closing of the acquisition of Development Project, the Closing Note shall be cancelled and a new note replacing same shall be issued by Sunny Ocean 699, LLC secured by a second mortgage against the subject property in an amount of the Capital Contribution of Elm Street Investments, LLC . . . running at 6% annually, and such mortgage shall be in a second lien position.

---

[3]    Sworn filings later submitted by Sunny Ocean in a Bankruptcy Action and with the Florida Secretary of State suggest that at some point, Elm Street Investments was stripped of its membership interest in Sunny Ocean, while Defendant remained a member.  (SUMF ¶¶ 16-30).  Sunny Ocean was administratively dissolved by the State of Florida in September 2019 and no longer exists.  (SUMF ¶ 31).

(SUMF ¶ 62).  The Sunny Ocean Operating Agreement explicitly provides for repayment of Elm Street Investments' loan, plus interest at six percent, to be secured by the second mortgage.  (SUMF ¶ 66).

In accordance with the terms of the Sunny Ocean Operating Agreement, Elm Street Investments ultimately provided the $1,530,740.83 loan for the purchase of the Golden Beach Property through two payments: (1) a $250,000.00 deposit payment made on October 14, 2016, documented by a $250,000.00 promissory note ("First Note") signed on October 12, 2016 by Defendant, individually and as Authorized Member of Sunny Ocean; and (2) a $1,280,740.83 payment made on October 19, 2016, memorialized by the October 19, 2016 Promissory Note in the amount of $1,530,740.83, issued in favor of Elm Street Investments as "Lender," and signed by Defendant, individually and on behalf of Sunny Ocean as "Borrowers."  (SUMF ¶¶ 55, 59, 68).  The loan and Note were also secured by a Balloon Mortgage in favor of Elm Street Investments as Lender (as contemplated by the Sunny Ocean Operating Agreement), which served as a second mortgage on the Golden Beach Property.  (SUMF ¶ 80).

Defendant and Elm Street Investments were both assisted and represented by counsel for purposes of the Real Estate Transaction and in connection with the preparation, negotiation, revision, review and/or signing of the First Note, the Sunny Ocean Operating Agreement, the Promissory Note, and the Balloon Mortgage.

(SUMF ¶¶ 81-85).  Defendant was represented by Adrian Irias, Esq. ("Irias"), and Elm Street Investments and Brenda Smith were represented by Andrew Hurni ("Hurni").[4]  (SUMF ¶¶ 81-82).  Irias and Hurni exchanged numerous e-mails regarding the First Note, the Sunny Ocean Operating Agreement, the Promissory Note, and the Balloon Mortgage.  (SUMF ¶¶ 86, 88, 90, 95, 101-02, 104, 110-12).

Defendant's own attorney, Irias, drafted the October 19, 2016 Promissory Note and Balloon Mortgage to be signed by Defendant, which Hurni thereafter approved.  (SUMF ¶¶ 109-11).  Irias then requested that a wire be sent for closing on the Golden Beach Property in the precise amount of $1,280,740.83, and Elm Street Investments initiated the wire and transferred $1,280,740.83 the same day. (SUMF ¶¶ 112-13). Elm Street Investments sent the wire before the closing documents were signed.  (SUMF ¶¶ 114-18).

Defendant, Irias, and Irias's secretary were present at closing on October 19, 2016.  (SUMF ¶ 129).  Neither George Heckler, Brenda Smith, nor Andrew Hurni were present at closing.  (SUMF ¶ 130).  Irias reviewed the Real Estate Transaction documents, including the Promissory Note, and Defendant had the opportunity to review the two-page Note before he signed it.  (SUMF ¶¶ 81, 123-24).  Defendant reviewed the five-page Balloon Mortgage before he signed it. (SUMF ¶ 128).

---

[4]    Hurni's representation of Brenda Smith and Elm Street Investments did not extend to or include George Heckler.  (SUMF ¶ 84).

Defendant also trusted that Irias had reviewed these documents and chose to rely upon his attorney's review. (SUMF ¶ 125). Defendant signed and executed the Promissory Note on behalf of himself individually and on behalf of Sunny Ocean, and he also signed and executed the Balloon Mortgage. (SUMF ¶¶ 121-22, 128). Defendant left the executed Promissory Note and Balloon Mortgage with his attorney, who thereafter sent the original executed documents to Hurni. (SUMF ¶¶ 131, 133, 168-69).

### B.    The Promissory Note

Elm Street Investments' $1,530,740.83 loan for the purchase of the Golden Beach Property was memorialized by the October 19, 2016 Promissory Note issued in favor of Elm Street Investments as "Lender," and signed by Defendant, both individually and on behalf of Sunny Ocean, as "Borrowers." (SUMF ¶ 68). The Note states that "[i]f more than one Borrower signs this Mortgage, the word 'Borrower' shall mean each Borrower named above[,]" and "[t]he word 'Lender' means the original Lender and anyone else who takes this Mortgage by transfer." (SUMF ¶¶ 69-70). The Note allows the Lender to enforce any of its provisions "against any one or more of the Borrowers who sign this Note." (SUMF ¶ 76).

The Note provides that "[i]n return for a loan that the Borrower received, the Borrower promises to pay $1,530,740.83 (called 'Principal'), plus interest to the order of the Lender." (SUMF ¶ 71). Interest is accruing at a rate of six percent (6.0

8

%) per year from the date of the Note until all Principal is paid.  (*See id.*).  The Principal balance plus interest was to be paid upon the earlier of (i) the sale of and at the time of closing of the Golden Beach Property by Sunny Ocean to a third party, or (ii) October 11, 2017.  (SUMF ¶ 72).  The Note provides that "[u]pon default, the Borrower must immediately pay the full amount of all unpaid Principal, interest, and other amounts due on this Note and the Lender's costs of collection and reasonable attorney fees."  (SUMF ¶ 74).

The Note provides that "[t]he Lender may exercise any right under this Note, the Mortgage or under any law, even if the Lender has delayed in exercising that right or has agreed in an earlier instance not to exercise that right.  Lender does not waive its right to declare that the Borrower is in default by making payments or incurring expenses on the Borrower's behalf."  (SUMF ¶ 75).  The Note further provides that it "can only be changed by an agreement in writing signed by the Borrower and the Lender."  (SUMF ¶ 77).

On October 27, 2016, after recording the necessary documents, Irias mailed the Balloon Mortgage and Promissory Note to Hurni.  (SUMF ¶¶ 168-69).  Hurni received the original executed Promissory Note in his capacity as counsel for Elm Street Investments, and subsequently gave the original executed Note to Brenda Smith.  (SUMF ¶¶ 170-71).  Hurni has stated that upon information and belief, the

original Promissory Note was given to Smith at her offices at Four Falls Corporate Center in Conshohocken, Pennsylvania. (SUMF ¶ 172).

The Receiver has directed a diligent investigation and search of the books and records of Brenda Smith and the Receivership Parties, including Elm Street Investments, but has not been able to locate the original, wet-ink Promissory Note. (SUMF ¶¶ 175, 177(c)). Accordingly, the Receiver signed and submitted a notarized Lost Note Affidavit on May 26, 2022 in connection with this matter. (SUMF ¶ 177).

## C. The Golden Beach Property is Foreclosed Upon, and Sunny Ocean Files for Bankruptcy

Despite taking responsibility for marketing and selling the property, and despite receiving offers and/or potential offers from numerous prospective buyers, Defendant never sold the Golden Beach Property. (SUMF ¶¶ 134-38, 155). And although Defendant, his lawyers, and various other individuals with whom Defendant was associated attempted to negotiate an extension or modification of the Original Mortgage and Note around June 2017, no representative, attorney, owner, or agent of Elm Street Investments was included in these conversations, and no deal was reached with the Original Mortgage and Note Holder. (SUMF ¶¶ 143-44).

On July 18, 2017, Victor K. Rones, as Trustee of an Unrecorded Land Trust ("Rones"), filed a mortgage foreclosure action ("Foreclosure Action") against Residence Golden Beach FLA, LLC and Sunny Ocean, alleging that the sum due on

the Original Mortgage and Note was not paid when it became due in full on June 25, 2017.  (SUMF ¶¶ 153-54).

On May 21, 2018, Sunny Ocean filed a Bankruptcy Action in the United States Bankruptcy Court for the Southern District of Florida.  (SUMF ¶¶ 18, 156). On June 14, 2018, Sunny Ocean filed a Declaration Under Penalty of Perjury for Non-Individual Debtors in the Bankruptcy Action, in which it stated that Elm Street Investments was a secured creditor with a claim in the amount of $1,530,740.83, secured by the Golden Beach Property.  (SUMF ¶¶ 22-23).  On or about July 9, 2018, Elm Street Investments filed a Proof of Claim in the Bankruptcy Action, asserting it had a secured claim pursuant to the recorded mortgage/note in the amount of $1,530,740.83.  (SUMF ¶ 158).  On September 19, 2018, the Bankruptcy Action was dismissed.  (SUMF ¶ 159).

On or about November 6, 2018, Elm Street Investments was added as a defendant in the Foreclosure Action.  (SUMF ¶ 160).  On or about March 13, 2019, the Golden Beach Property was lost through a Foreclosure Judgment entered in favor of Rones, and on or about May 1, 2019, the Golden Beach Property was sold at a public auction for less than $1 million—significantly less than the amount due on the Original Mortgage and Note.  (SUMF ¶ 161).

### D.    Defendant and Sunny Ocean Default on the Promissory Note

Because Sunny Ocean failed to sell the Golden Beach Property to a third party by October 11, 2017, Defendant and Sunny Ocean, as Borrowers under the Promissory Note, were obligated to pay Elm Street Investments, as Lender, the principal balance due on the Note plus accrued and unpaid interest by that date. (SUMF ¶ 162).

On January 3, 2018, Hurni e-mailed Irias requesting a call regarding the Real Estate Transaction and Promissory Note, noting that the Promissory Note was in default, the Property had not been sold, and that Elm Street Investments wished to sell the Golden Beach Property pursuant to the terms of the Sunny Ocean Operating Agreement. (SUMF ¶ 164).  Neither Defendant nor Sunny Ocean ever paid Elm Street Investments as required by the Promissory Note, and Elm Street Investments has not been repaid any principal or interest on the Note.  (SUMF ¶ 163).  And since the Golden Beach Property was lost through foreclosure, Elm Street Investments has lost the security offered by the Balloon Mortgage.

On August 11, 2021, the Receiver demanded payment from Defendant on the balance of the Promissory Note, plus interest, within thirty (30) days.  (SUMF ¶ 165).  To date, Defendant has not remitted payment to the Receiver.  (*See id.*).  As of January 16, 2023, the Balance Due on the Promissory Note (including principal

plus accrued interest at 6%) was $2,104,202.48, and interest on the Note continues to accrue at a rate of six percent (6%). (SUMF ¶¶ 166-67).

### E.    The Instant Action

Pursuant to the Receivership Order, and on behalf of Elm Street Investments, the Receiver filed the instant action against Defendant to recover the $1,530,740.83 due and owing under the Promissory Note, plus attorneys' fees, six percent interest, and costs. (SUMF ¶ 1). The Amended Complaint asserts two claims against Defendant: (1) an action for breach of contract/to enforce note, seeking to enforce the October 19, 2016 Promissory Note, and (2) an action to reestablish the Note pursuant to Fla. Stat. § 673.3091 and/or 13 Pa.C.S. § 3309 because, as evidenced by the Receiver's Lost Note Affidavit dated May 26, 2022, the Receiver has directed a diligent investigation and search of the books and records of Brenda Smith, the Receivership Parties, and Elm Street Investments, but has not been able to recover or locate the original, wet-ink Promissory Note. (SUMF ¶¶ 2, 177).

## III.    ARGUMENT

Despite having been unable to locate the original, wet-ink Note, the Receiver is still entitled to enforce the Note on behalf of Elm Street Investments because: (1) he has provided a copy of the original Note as well as a Lost Note Affidavit; (2) Defendant admits the existence of the Promissory Note and that the copy provided by the Receiver is a true and correct copy of the original executed Note; (3)

Defendant does not deny the authenticity or authority for his signatures on the Note; (4) Defendant is not aware of the Note ever being sold to anyone else; (5) Hurni is not aware of the Promissory Note ever being sold, transferred, or assigned; (6) no one else had demanded payment on the Note; and (7) there is no evidence that the Note was ever transferred or lawfully seized.  (SUMF ¶¶ 173, 177-79, 182-83, 185).  For these reasons, as explained in detail below, the Receiver files the instant Motion seeking summary judgment in his favor and against Defendant on both claims.

**A.    Standard on Summary Judgment**

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In determining whether there remain any genuine issues of material fact, the court must resolve all reasonable doubt in favor of the nonmoving party." *Tuxedo Beach Club Corp. v. City Fed. Sav. Bank*, 749 F. Supp. 635, 640 (D.N.J. 1990).

"[W]here the moving party has made a properly supported motion for summary judgment, it is incumbent upon the nonmoving party to come forward with specific facts to show that there is a genuine issue of material fact for trial."  *Id.*  In other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Resol. Tr. Corp. Receiver of Action*

*Fed. Sav. Bank v. Wilson*, 851 F. Supp. 141, 144 (D.N.J. 1994) (quotations omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  The non-movant "must produce sufficient evidence to reasonably support a jury verdict in its favor" and "may not rest upon mere allegations or denials of its pleading[.]" *Tuxedo Beach Club*, 749 F. Supp. at 640 (internal quotations and citation omitted).  "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* (quoting *Anderson*, 477 U.S. at 249).

### B.      The Receiver Has Successfully Reestablished the Note and is Entitled to Enforce the Note on Behalf of Elm Street Investments

While the Receiver is not in possession of the original, wet-ink Promissory Note, this Court should nevertheless find that the Receiver is entitled to enforce the Note on behalf of Elm Street Investments because the undisputed facts show that the Receiver has satisfied all requirements under both Florida and Pennsylvania law in order to reestablish—and enforce—the Note against Defendant.[5]

---

[5]      In his fourth affirmative defense asserted in his Answer to the Amended Complaint, Defendant argues that Florida law should apply.  (*See* SUMF Ex. 27, Answer at 9).  While the Receiver defers to the Court's decision on the applicable state law, the Receiver notes that, aside from Florida law, the only other state law that is relevant to this action is Pennsylvania, where Elm Street Investments was

Under Florida's and Pennsylvania's Uniform Commercial Codes, a person not in possession of an instrument may still enforce the instrument pursuant to the states' respective statutes for the enforcement of lost, destroyed, or stolen instruments. *See* Fla. Stat. § 673.3011(3); 13 Pa.C.S. § 3301(3). Both states' statutes provide that a person may enforce a lost instrument if they show: (1) that they were entitled to enforce the instrument when loss of possession occurred; (2) the loss of possession was not the result of a transfer by the person or a lawful seizure; and (3) the person cannot reasonably obtain possession of the instrument because its whereabouts cannot be determined. *See* Fla. Stat. § 673.3091(1); 13 Pa.C.S. § 3309(a).[6] In

---

located. The Receiver is entitled to judgment as a matter of law because he has demonstrated that, under Florida and Pennsylvania law, he is entitled to enforce the Note and Defendant has breached his obligations under the Note.

[6]    Florida's Uniform Commercial Code provides:

   (1) A person not in possession of an instrument is entitled to enforce the instrument if:
       (a) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;
       (b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and
       (c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

Fla. Stat. § 673.3091(1). Pennsylvania's Uniform Commercial Code provides:

   (a) Enforcement.--A person not in possession of an instrument is entitled to enforce the instrument if:

addition, the person seeking to enforce the lost instrument must prove (1) the terms of the instrument and (2) their right to enforce the instrument. *See* § 673.3091(2); § 3309(b).[7] If that proof is made, and the validity of signatures is admitted or proven,

---

     (1) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred;

     (2) the loss of possession was not the result of a transfer by the person or a lawful seizure; and

     (3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

13 Pa.C.S. § 3309(a).

[7]    (2)  A person seeking enforcement of an instrument under subsection (1) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, s. 673.3081 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

Fla. Stat. § 673.3091(2).

    (b) Proof.--A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, section 3308 (relating to proof of signatures and status as holder in due course) applies to the case as if the person seeking enforcement had produced the instrument.  The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument.  Adequate protection may be provided by any reasonable means.

13 Pa.C.S. § 3309(b).

that person is entitled to payment pursuant to the terms of the instrument as if they had produced the original. *See ids.*[8] However, the Court will only enter judgment in favor of the person seeking enforcement if it finds that the person required to pay the instrument is adequately protected against loss that might occur if another person seeks to enforce the instrument. *See ids.* "Adequate protection may be provided by any reasonable means." *Ids.*

Notably, courts have granted summary judgment for the party seeking to enforce a lost note under Florida (§ 673.3091) or Pennsylvania (§ 3309) law where the party provides a copy of the note and an affidavit attesting to the relevant statutory requirements. *See, e.g.*, *Branch Banking & Trust Co. v. S & S Dev., Inc.*, 620 F. App'x 698, 701 (11th Cir. 2015) (affirming summary judgment for the plaintiff seeking to enforce the lost note where the plaintiff submitted an affidavit that "on its face, me[t] the requirements of Fla. Stat. § 673.3091(1)"); *U.S. Bank Nat. Ass'n v. Piacente*, No. 472 MDA 2015, 2015 WL 7301906, at *1 (Pa. Super. Ct. Nov. 19, 2015) (affirming summary judgment for the plaintiff seeking to enforce the note where the plaintiff provided an affidavit that "attached a copy of the original

---

[8] *See* Fla. Stat. § 673.3081 (providing, *inter alia*, that "the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings" and that "[i]f the validity of signatures is admitted or proved, . . . a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument, unless the defendant proves a defense or claim in recoupment, to which the right to payment is subject to the extent applicable); 13 Pa.C.S. § 3308 (same).

note and stated that, after a thorough and diligent search of the hard copy file pertaining to the loan, the original note was not located, and the loss was not a result of cancellation or transfer of the note to another party.").

As shown below, the Receiver has proven through the undisputed facts, a copy of the original Note, and the Lost Note Affidavit that he has satisfied all requirements under Florida and Pennsylvania law to reestablish and enforce the Note on behalf of Elm Street Investments.

### 1.    Elm Street Investments Was Entitled to Enforce the Note at the Time Loss of Possession Occurred.

First, Elm Street Investments was the holder of the instrument when loss of possession occurred and—through its sole member and manager, Brenda Smith—it was entitled to enforce the Note at the time loss of possession occurred. *See* Fla. Stat. § 673.3091(1)(a); 13 Pa.C.S. § 3309(a)(1).

The "[p]erson entitled to enforce" an instrument includes "the holder of the instrument." Fla. Stat. § 673.3011(1); 13 Pa.C.S. § 3301(1).[9] A "holder" is defined in relevant part as a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Fla. Stat. § 671.201(21)(a); 13 Pa.C.S. § 1201(21)(i); *see also U.S. Bank Nat. Ass'n v. Knight*,

---

[9]    The term "person entitled to enforce" also includes "[a] person not in possession of the instrument who is entitled to enforce the instrument" pursuant to the statutes regarding the enforcement of lost, stolen, or destroyed instruments. *See* Fla. Stat. § 673.3011(3); 13 Pa.C.S. § 3301(3) (citing Fla. Stat. § 673.3091; 13 Pa.C.S. § 3309).

90 So. 3d 824, 826 (Fla. Dist. Ct. App. 2012) (quoting Fla. Stat. § 673.3011(1)) ("The person entitled to enforce a negotiable instrument, such as a promissory note, is the 'holder of the instrument.'"); *PHH Mortg. Corp. v. Powell*, 100 A.3d 611, 620 (Pa. Super. Ct. 2014) (quoting 13 Pa.C.S. § 3301(1)) ("[A] holder of a negotiable instrument is a 'person entitled to enforce' it.").

Here, Elm Street Investments was the holder of the Note when loss of possession occurred. The Note executed by Defendant, individually and on behalf of Sunny Ocean as "Borrowers," specifically identifies Elm Street Investments as "Lender" and provides that "[i]n return for a loan that the Borrower received, the Borrower promises to pay $1,530,740.83 (called 'Principal'), plus interest to the order of the Lender." (SUMF ¶¶ 68, 71). The Note defines the term "Lender" to mean "the original Lender and anyone else who takes this [Balloon] Mortgage by transfer." (SUMF ¶ 70). Elm Street Investments is the only "Lender" under the express terms of the Note, and because there is no evidence that the Note or Balloon Mortgage were ever transferred, (*see* SUMF ¶¶ 174, 177(f), 185-86), Elm Street Investments was the only party entitled to enforce the Note when loss of possession occurred. Indeed, Defendant himself acknowledged that Elm Street Investments was the holder of the Note. (SUMF ¶ 181).

Moreover, Elm Street Investments was in possession of the Note when loss of possession occurred. (SUMF ¶¶ 168-72). The Receiver testified in his Lost Note

20

Affidavit that Elm Street Investments was in possession of the Note and was entitled to enforce it at the time the loss of possession occurred. (SUMF ¶ 177(e)). *See Branch*, 620 F. App'x at 701-02 (finding that "BB & T has met its burden and has standing to enforce the promissory note" where it submitted an affidavit stating, inter alia, that "BB & T was entitled to enforce the Note when loss of possession occurred"); *MB Fin. Bank v. Rao*, 239 A.3d 181, 186 (Pa. Super. Ct. 2020) (finding that "SunTrust satisfied the requirements of 13 Pa.C.S. § 3309" where the lost note affidavit stated, *inter alia*, that "[t]he Note was in SunTrust's possession and SunTrust was entitled to enforce the Note when the loss occurred.").

Accordingly, the undisputed facts show that Elm Street Investments, as the holder of the Note, was entitled to enforce the Note at the time loss of possession occurred. *See* Fla. Stat. § 673.3091(1)(a); 13 Pa.C.S. § 3309(a)(1).

### 2. The Loss of Possession Was Not the Result of Transfer or Lawful Seizure.

Second, the loss of possession of the Note was not the result of transfer or lawful seizure. *See* Fla. Stat. § 673.3091(1)(b); 13 Pa.C.S. § 3309(a)(2). The Receiver has testified to such in the Lost Note Affidavit. (*See* SUMF ¶ 177(f)) (quoting Ex. 5, Lost Note Affidavit ¶ 19). The testimony in the Receiver's Lost Note Affidavit, coupled with the fact that the Receiver has provided a copy of the Note, is sufficient to satisfy this statutory requirement under Florida and Pennsylvania law. *See Branch*, 620 F. App'x at 701; *Rao*, 239 A.3d at 186.

But additional undisputed facts also help prove this requirement. For example, Hurni—who represented Elm Street Investments and Brenda Smith in connection with the Real Estate Transaction—testified by affidavit that he is not aware of the Note ever being sold, transferred, or assigned. (SUMF ¶¶ 82, 174). At the time of the Bankruptcy Action in 2018, Sunny Ocean and Elm Street Investments both identified Elm Street Investments as a secured creditor with a claim in the amount of $1,530,740.83 (*i.e.*, the exact amount memorialized by the Note). (SUMF ¶¶ 22-23, 158). Further, Defendant testified that he is not aware of the Note being sold, and that nobody else has demanded payment from him on the Note. (SUMF ¶¶ 182-83). Finally, discovery has revealed no evidence that the Note was transferred or lawfully seized. (SUMF ¶ 185).

Accordingly, the undisputed facts show that the loss of possession of the Note was not the result of transfer or lawful seizure. *See* Fla. Stat. § 673.3091(1)(b); 13 Pa.C.S. § 3309(a)(2).

### 3.    The Receiver Cannot Reasonably Obtain Possession of the Note Because its Whereabouts Cannot be Determined.

Third, the Receiver cannot reasonably obtain possession of the Note because, after a diligent investigation and search, its whereabouts cannot be determined. *See* Fla. Stat. § 673.3091(1)(c); 13 Pa.C.S. § 3309(a)(3). To satisfy this requirement, "it is sufficient for the [party] to simply testify that he or she conducted a search for the lost note but could not locate it." *Wells Fargo Bank, N.A. v. Bricourt*, 290 So.3d

501, 505 (Fla. Dist. Ct. App. 2020) (citing *Connelly v. Matthews*, 899 So. 2d 1141, 1143 (Fla. 4th DCA 2005)); *see also Rao*, 239 A.3d at 186 (finding the requirements of § 3309 were satisfied where the lost note affidavit stated, *inter alia*, that "SunTrust conducted a diligent search and was not reasonably able to obtain possession of the Note and its whereabouts could not be determined.").

Here, the Receiver has satisfied this requirement by way of the Lost Note Affidavit. (*See* SUMF ¶ 177(g)) (quoting Ex. 5, Lost Note Affidavit ¶ 20) ("Based upon my or my agents' review of Elm Street Investments' corporate books and records, communications, public filings, and other data compilations made and kept in the ordinary course of business of Elm Street Investments and/or in connection with the Receivership, and my inquiries or inquiries made under my direction to others with knowledge of those records, I cannot reasonably obtain possession of the original Note because its whereabouts cannot be determined."); (*see also* SUMF ¶ 171). Defendant, Hurni, and others have likewise stated that they are not aware of the current whereabouts of the Note. (SUMF ¶¶ 173, 176, 180).

The undisputed facts thus show that the Receiver cannot reasonably obtain possession of the Note because its whereabouts cannot be determined. *See* Fla. Stat. § 673.3091(1)(c); 13 Pa.C.S. § 3309(a)(3).

4. **The Receiver Has Proven the Terms of the Note and His Right to Enforce the Note on Behalf of Elm Street Investments.**

"A person seeking enforcement of an instrument under [Fla. Stat. § 673.3091(1) or 13 Pa.C.S. § 3309(a)] must prove the terms of the instrument and the person's right to enforce the instrument." Fla. Stat. § 673.3091(2); 13 Pa.C.S. § 3309(b).

Florida and Pennsylvania courts have both found that the terms of a note can be proven where the party seeking to enforce the note produces a copy of the original note, and the party against whom the note is being enforced admits that the copy is an accurate copy of the original note. *See, e.g.*, *NWE7 LLC v. Thomco Enterprises, Inc.*, No. 3:13CV439/MCR/EMT, 2015 WL 11109790, at *3 (N.D. Fla. Jan. 5, 2015) (finding the terms of the note were proven because there "is no dispute that the terms of the . . . Note are accurately set forth in the [] copy of the . . .Note attached to the Amended Complaint"); *Piacente*, 2015 WL 7301906, at *3 (finding the appellee was entitled to enforce the lost note because the appellee "produced a copy of the Note in question and [Appellant] did not deny executing the Note.").

Here, the Receiver has proven the terms of the Note. Not only has the Receiver attached a copy of the Note to the Amended Complaint, but Defendant has also admitted to the existence of the Note and that the copy attached to the Amended Complaint is a true and correct copy of the original executed Note. (SUMF ¶ 178).

24

The Receiver, pursuant to the Receivership Order, has also demonstrated his right to enforce the Note on behalf of Elm Street Investments. The Receivership Order states that the Receiver has all powers, authorities, rights, and privileges that were possessed by the officers, directors, managers, and general and limited partners of the Receivership Parties and may take any action that could have been taken by the officers, directors, partners, managers, trustees, and agents of the Receivership Parties—including, *inter alia*, Elm Street Investments. (SUMF ¶¶ 4-5). Florida and Pennsylvania courts have likewise acknowledged that federally-appointed equity receivers have all the rights of the entities they were appointed to represent. *See In re Wiand*, No. 8:05CV1856, 2007 WL 963162, at *13 (M.D. Fla. Jan. 12, 2007) (citing *Hamilton v. Flowers*, 183 So. 811, 817 (Fla. 1938)) ("As a general rule in Florida, the receiver steps into the shoes of the corporation, individual or estate whose interests he was appointed to protect and therefore takes the rights, causes and remedies that were available to the entity he was chosen to represent."); *Resol. Tr. Corp. v. Koock*, 867 F. Supp. 284, 286 (E.D. Pa. 1994) (explaining that the Receiver had "all the rights, titles, powers and privileges" of the receivership entity "[b]y virtue of its appointment as receiver"). And notwithstanding the Receivership Order, federally-appointed equity receivers are generally required to manage and operate receivership property in the same manner that the owner or possessor of the property would be bound to do if in possession of it. *See* 28 U.S.C. § 959(b).

Accordingly, the Receiver, having proven the terms of the Note and having all the rights of Elm Street Investments, is entitled to enforce the Note on behalf of Elm Street Investments.  *See* Fla. Stat. § 673.3091(2); 13 Pa.C.S. § 3309(b).

> **5.    The Receiver is Entitled to Payment Pursuant to the Terms of the Note Because Defendant Admits the Authenticity of His Signature on the Note and His Authority to Sign the Note.**

When a person seeking enforcement of an instrument under Fla. Stat. § 673.3091(1) or 13 Pa.C.S. § 3309(a) proves the terms of the instrument and their right to enforce the instrument, the signature of the party against whom the instrument is being enforced must be either admitted or proven.  *See* Fla. Stat. § 673.3091(2); 13 Pa.C.S. § 3309(b).[10]  "[T]he authenticity of, and authority to make, [the] signature on the instrument is admitted unless *specifically* denied in the pleadings."  Fla. Stat. § 673.3081; 13 Pa.C.S. § 3308 (emphasis added); *see also Lipton v. Se. First Nat. Bank of Miami*, 343 So.2d 927, 928 (Fla. Dist. Ct. App. 1977) (affirming summary judgment for the plaintiff and explaining that even though the defendant claimed the plaintiff did not prove he signed the instruments, "his signatures thereon were admitted . . . and no issue was presented" because the defendant "did not specifically deny [his] signatures on the instruments"); *Nat'l*

---

[10]    "A person seeking enforcement of an instrument under subsection (1) must prove the terms of the instrument and the person's right to enforce the instrument. *If that proof is made, [section 673.3081 or 3308] applies to the case as if the person seeking enforcement had produced the instrument*."  Fla. Stat. § 673.3091(2); 13 Pa.C.S. § 3309(b) (emphasis added) (citing Fla. Stat. § 673.3081; 13 Pa.C.S. § 3308).

*Recovery Sys. v. Nemchik*, 24 Pa. D. & C.3d 22, 35 (Pa. Com. Pl. 1982) (explaining that "when the effectiveness of a signature is put into issue, the signature is presumed to be genuine[,]" especially where the defendant does not provide evidence to rebut the presumption).

Here, the authenticity of Defendant's signatures on the Note, and his authority to sign the Note, is admitted because Defendant did not specifically deny such in his Answer to the Amended Complaint. (SUMF ¶ 179). In fact, Defendant explicitly acknowledged in the pleadings and in discovery that he signed the Note and that the copy of the Note is a true and correct copy of the original, wet-ink Note. (SUMF ¶¶ 122, 178).

Where the validity of signatures is admitted or proven, the plaintiff is entitled to recover on the instrument if they successfully prove entitlement to enforce it under the applicable statutes, unless the defendant proves a defense or claim in recoupment—at which point, the right to payment is subject to the defense or claim, except to the extent the plaintiff proves that he has rights not subject to the defense or claim. *See* Fla. Stat. § 673.3081; 13 Pa.C.S. § 3308(b).[11]

---

[11]    While Defendant has asserted a defense for fraudulent inducement, (*see* SUMF Ex. 27, Answer at 7-8), the defense is only available where the obligor signed the instrument "with neither knowledge nor reasonable opportunity to learn of its character or essential terms." Fla. Stat. § 673.3051(1)(a)(3); 13 Pa.C.S. § 3305(a)(1)(iii). Given that Defendant's own attorney drafted the Note (SUMF ¶ 110), and Defendant had an opportunity to review it prior to signing it (SUMF ¶ 123), this defense fails as a matter of law. Further, Defendant's claim that Heckler told him Elm Street Investments would not enforce the Note cannot support the

Since the Receiver has proven the authenticity of Defendant's signature on the Note and his authority to sign the Note, the Receiver is entitled to payment. *See* Fla. Stat. §§ 673.3081, 673.3091(2); 13 Pa.C.S. §§ 3308, 3309(b).

> **6.    Defendant is Adequately Protected Against Loss that Might Occur by Reason of a Claim by Another Person to Enforce the Instrument.**

When all statutory requirements under Fla. Stat. § 673.3091 or 13 Pa.C.S. § 3309 have been satisfied, the court may enter judgment in favor of the person seeking enforcement where "it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument." Fla. Stat. § 673.3091(2); 13 Pa.C.S. § 3309(b).

"Adequate protection may be provided by any reasonable means[,]" and "[t]he court is given discretion in determining how adequate protection is to be assured." Fla. Stat. § 673.3091(2) & cmt.; 13 Pa.C.S. § 3309(b) & cmt. "'[A]dequate protection is a flexible concept' and 'depend[s] on the degree of certainty about the

---

defense—and is not a disputed material fact that precludes summary judgment here—because Defendant claims Heckler made this statement ***after*** Defendant signed the Note and the Real Estate Transaction had closed. (SUMF ¶ 132). Heckler's purported statement made after the Note was executed also cannot support Defendant's fraudulent inducement defense when the Note does not allow for oral modifications. (SUMF ¶ 77). Finally, Heckler never made any representation to Defendant regarding Heckler's authority to act or speak on behalf of Elm Street Investments, Defendant never attempted to clarify what Heckler's role was with respect to Elm Street Investments or his purported authority to speak on behalf of Elm Street Investments, and Defendant never spoke to Brenda Smith—the sole member and manager of Elm Street Investments. (SUMF ¶¶ 57-58).

facts in the case[]'" because "this concern does not arise in every case[.]" *Branch*, 620 F. App'x at 701 (quoting *Connelly*, 899 So.2d at 1143 n.3).

For example, there is substantial risk of a holder in due course making a demand for payment where the instrument was payable to bearer when it was lost or stolen. *See* Fla. Stat. § 673.3091, cmt.; 13 Pa.C.S. § 3309, cmt. However, the Promissory Note at issue here was not payable to bearer—it was payable to order of an identified person (the Lender), *i.e.*, Elm Street Investments.[12] (SUMF ¶¶ 70-71). Where, as here, "the instrument was payable to the person who lost the instrument and that person did not indorse the instrument,[13] *no other person could be the holder*

---

[12]    *See* Fla. Stat. § 673.1091 (defining promises or orders payable to bearer or an identified person); 13 Pa.C.S. § 3109 (same).

[13]    Both states' Uniform Commercial Codes have nearly identical definitions of the term "indorsement." *Compare* Fla. Stat. § 673.2041(1) ("'Indorsement' means a signature, other than that of a signer as maker, drawer or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of negotiating the instrument, restricting payment of the instrument or incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument."), *with* 13 Pa.C.S. § 3204(a) ("The term 'indorsement' means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of negotiating the instrument, restricting payment of the instrument, or incurring indorser's liability on the instrument; but, regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.").

*of the instrument*." Fla. Stat. § 673.3091, cmt.; 13 Pa.C.S. § 3309, cmt. (emphasis added); (SUMF ¶ 79). Similarly, adequate protection may be of minimal importance where, as here, the note was only payable to an identified person or a transferee, but there is no evidence that the note was ever transferred prior to loss of possession. (SUMF ¶¶ 70, 174, 177, 185).[14]

Further, Defendant has also testified that no one other than the Receiver has demanded payment on the Promissory Note (SUMF ¶ 183), five and a half (5½) years after payment was due. There is a five (5) year statute of limitations under Florida law for actions to enforce notes, and a four (4) year statute of limitations under Pennsylvania law for actions to enforce notes. *See* Fla. Stat. § 95.11(2)(b); 42 Pa.C.S. § 5525(a)(7). Therefore, any attempt by someone else to enforce the Note would be time-barred as a matter of law.[15]

In light of the foregoing, it would be virtually impossible for any other person to attempt to enforce the Note against Defendant. Nevertheless, to the extent any

---

[14]   As explained in Section III.B.1, *supra*, the Note is payable to Elm Street Investments as "Lender," and Elm Street Investments was the holder of the Note when loss of possession occurred. There is no evidence that the Note was ever transferred or that Elm Street Investments indorsed the Note. (SUMF ¶¶ 79, 185). As such, no other person could theoretically be a holder of the Note.

[15]   Pennsylvania appears to have a contradictory provision in its Uniform Commercial Code providing that actions to enforce a party's obligation to pay a note must be commenced within six (6) years after the due date. *See* 13 Pa.C.S. § 3118(a). However, even if that did apply, that date is less than six (6) months away and will likely expire before any payment is made in this case.

such concerns remain, the Court can require the Receiver to hold the funds in escrow or to indemnify Defendant for any defense costs and/or judgments, up to the amount of any judgment paid, for a defined period of time until which the Court could be certain that no risk remains.  Florida and Pennsylvania courts have both found indemnification provides adequate protection. *See, e.g.*, *Gee v. McDevitt*, No. 619CV936ORL31 GJK, 2020 WL 5371145, at *2 (M.D. Fla. Aug. 11, 2020) ("Plaintiff has [] established adequate protection for Defendant and Sensei by agreeing to indemnify them against any action brought by any third party relating to the Loan Documents."); *Xerox Corp. v. Se. Print Programs, Inc.*, No. 8:16-2159-T-33TGW, 2016 WL 6217123, at *4 (M.D. Fla. Oct. 25, 2016) ("Xerox agrees to indemnify Southeast and Phillips from any loss they might incur from a claim by another person to enforce the Note. . . . the Court finds that Xerox's representation that it will indemnify Southeast and Phillips is adequate protection."); *Rao*, 239 A.3d at 186 ("SunTrust stated it agreed to indemnify Rao if another entity attempted to claim enforcement of the Note, thereby adequately protecting Rao against loss that might occur via a claim by another person to enforce the Note."); *Bobby D. Assocs. v. DiMarcantonio*, 751 A.2d 673, 676 (Pa. Super. Ct. 2000) (finding that "the trial court did ensure adequate protection" in accordance with § 3309(b) because the plaintiff agreed to "execute an Indemnification Agreement in favor of Defendants for any claims made by a third party" that attempts to enforce the lost note).

### 7. The Receiver Has Satisfied All Elements Necessary to Entitle Him to Enforce the Note.

As shown above, the undisputed material facts show that all statutory requirements under Florida and Pennsylvania law have been satisfied in order for the Receiver to reestablish and enforce the Note on behalf of Elm Street Investments. Accordingly, this Court should grant the instant Motion and enter summary judgment in favor of the Receiver on the action to reestablish the Note.

### C. Defendant Has Breached His Obligations Under the Note and is Therefore Liable for All Amounts Due Under the Note

Given that the Receiver may enforce the Note on behalf of Elm Street Investments as a matter of law, this Court should also enter summary judgment in favor of the Receiver on his breach of contract claim because the undisputed facts show that Defendant breached his obligations under the Note.

Under Florida and Pennsylvania law, a breach of contract claim requires the plaintiff to prove (1) the existence of a contract, (2) a breach of its terms, and (3) resultant damages. *See Branch Banking & Tr. Co. v. S & S Dev., Inc.*, No. 8:13-1419-T-30TGW, 2014 WL 2215703, at *2 (M.D. Fla. May 28, 2014), *aff'd*, 620 F. App'x 698 (11th Cir. 2015) (citing *J.J. Gumberg Co. v. Janis Servs.*, 847 So.2d 1048, 1049 (Fla. 4th DCA 2003)) ("The elements of a breach of contract claim in Florida are a valid contract, a material breach and damages."); *Conquest v. WMC Mortg. Corp.*, 247 F. Supp. 3d 618, 638 (E.D. Pa. 2017) (internal quotations and citation

omitted) ("Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.").[16]

Florida and Pennsylvania courts have granted summary judgment in favor of a plaintiff asserting breach of a promissory note where the undisputed facts showed (1) the defendant executed the note, (2) the defendant defaulted on the note, and (3) the amount the defendant owes under the note. *See JPMorgan Chase Bank v. Synergy Pharmacy Servs., Inc.*, No. 8:18-1253-VMC-SPF, 2021 WL 2351179, at *4 (M.D. Fla. June 9, 2021) (granting the plaintiff's motion for summary judgment on the breach of promissory note claim where the plaintiff "established that [the defendant] entered into valid contracts with [the plaintiff,]" the defendant "defaulted on its obligation to pay off the loan by failing to make any payments after September 2018[,]" and the plaintiff "established damages, as [the defendant] currently owes [the plaintiff] $1,833,547.60."); *Ford Motor Co. v. Heralpin USA, Inc.*, No. 20-20876, 2020 WL 4501807, at *2 (S.D. Fla. June 4, 2020) (granting the plaintiff's

---

[16]    "Under Florida law, the elements of a claim for breach of a promissory note are the same as those used for a breach of contract claim." *Harris v. Jan*, No. 2:18-383, 2019 WL 2567963, at *2 (M.D. Fla. June 21, 2019); *see also Frenkel v. Klein*, No. 14-2275, 2016 WL 7404466, at *2 (E.D. Pa. Dec. 22, 2016), *aff'd sub nom.*, 751 F. App'x 332 (3d Cir. 2018) (employing the elements for breach of contract under Pennsylvania law to a claim for breach of a promissory note); *Equip. Fin., LLC v. Hutchison*, No. 09-01964, 2011 WL 4482345, at *13 (E.D. Pa. Sept. 27, 2011) (same).

motion for summary judgment on the breach of promissory note claim where "[t]he undisputed evidence shows: (1) Defendants executed and delivered the Note to Plaintiff on August 21, 2018; (2) Defendants defaulted on the Note on January 1, 2019; and (3) as of May 14, 2020, Defendants owe $309,384.39, plus interest, which accrues at a per diem rate of $37.65 on that debt."); *Wells Fargo Bank, N.A. v. Chun Chin Yung*, 317 F. Supp. 3d 879, 887, 889 (E.D. Pa. 2018) (entering summary judgment in favor of the plaintiff on the plaintiff's breach of promissory note claim where "a valid and enforceable contract existed" and "there is no dispute that Defendants defaulted on the loan, or that [the plaintiff] correctly calculated the principal, interest, and the remainder of the fees" owed under the note); *Peoples State Bank of Wyalusing, PA v. Wellsburg Truck & Auto Sales, Inc.*, No. 3:CV-10-0433, 2013 WL 818726, at *6 (M.D. Pa. Mar. 5, 2013) (finding that "no genuine issue of material fact exists, and Plaintiff is entitled to summary judgment on its breach of contract claim" where the defendant "admitted that it entered into the promissory notes, that it had a duty to make payments under the promissory notes, and that it failed to make payments under the promissory notes.").

Here, the undisputed material facts make clear that Defendant breached his obligations under the Note. Defendant acknowledges that the copy of the Note attached to the Amended Complaint is a true and correct copy of the Note that he originally signed and executed on October 19, 2016. (SUMF ¶ 178). Defendant

34

signed the Note on behalf of himself individually and on behalf of Sunny Ocean as "Borrowers," and the Note is enforceable against either one or both Borrowers. (SUMF ¶¶ 68-69, 76).

The Note provides that "[i]n return for a loan that the Borrower received, the Borrower promises to pay $1,530,740.83 (called 'Principal'), plus interest to the order of the Lender[,]" that "[i]nterest at a yearly rate of 6.0% will be charged on that part of the Principal which has not been paid from the date of this Note until all Principal has been paid[,]" and that "[t]he Borrower will pay the Principal balance plus any accrued and unpaid interest upon the earlier of (i) the sale of and at the time of closing of the [Golden Beach] property . . . to a third party . . . or (ii) October 11, 2017." (SUMF ¶¶ 71-71). The Note further provides that "[i]f the Borrower fails to make any payment required by this Note within thirty (30) days after its due date, or if the Borrower fails to keep any other promise the Borrower makes in this Note or in the Mortgage, the Lender may declare that the Borrower is in default on the Mortgage and/or this Note." (SUMF ¶ 74). "Upon default, the Borrower must immediately pay the full amount of all unpaid Principal, interest, and other amounts due on this Note and the Lender's costs of collection and reasonable attorney fees." (*Id.*).

Neither Defendant nor Sunny Ocean ever paid Elm Street Investments by October 11, 2017 as required by the Promissory Note, nor have they remitted

payment to the Receiver since that date, despite the Receiver's demand for payment made on August 11, 2021.  (SUMF ¶¶ 163, 165).  As such, Defendant breached his obligations under the Note and can be held individually liable for the full amount due under the Note. (*See* SUMF ¶ 76) ("The Lender may enforce any of the provisions of this Note against any one or more of the Borrowers who sign this Note.").  As of January 16, 2023, the balance due on the Note (including principal plus accrued interest at 6%) was $2,104,202.48, and interest on the Note continues to accrue at a rate of six percent (6%).  (SUMF ¶¶ 166-67).

Accordingly, this Court should grant the instant Motion and enter summary judgment in favor of the Receiver on the claim for breach of contract/action to enforce the Note.  The Receiver respectfully requests that he be given thirty (30) days after the entry of summary judgment to submit a motion for assessment of damages against Defendant, which motion shall set forth the interest, costs, and attorney's fees due to the Receiver pursuant to the terms of the Note.

## IV.    CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that the Court grant the instant Motion for Summary Judgment and enter an order in the form proposed.

Respectfully submitted,

Dated: April 27, 2023

*/s/ Robin S. Weiss*
Robin S. Weiss, Esq.
Christopher M. Lucca, Esq.
**CLARK HILL PLC**
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Tel: (215) 640-8500
rsweiss@clarkhill.com
clucca@clarkhill.com

*Attorneys for Plaintiff, Kevin Dooley Kent, Receiver*